IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| CASANDRA TINGEY,<br><br>　　　　　　　Plaintiff,<br><br><br>v.<br><br>MIDWEST OFFICE, INC. dba MIDWEST COMMERCIAL INTERIORS dba MIDWEST OFFICE-INTERIOR SYSTEMS dba MIDWEST OFFICE dba BARGAIN OFFICE OUTFITTERS; JEREMY BRADLEY; SEAN WRIGHT; MARSHALL TATE; and TAMI SHULSEN,<br><br>　　　　　　　Defendants. | **ORDER AND MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br><br>Case No. 1:22-cv-00145-TC<br><br>Judge Tena Campbell |

Defendants Midwest Office, Inc. dba Midwest Commercial Interiors ("MWCI"); Sean Wright, Marshall Tate, and Tami Shulsen (collectively, the "Supervisor Defendants"); and Jeremy Bradley move to dismiss several of the claims asserted against them by Plaintiff Casandra Tingey.  (Defs.' Partial Mot. to Dismiss, ECF No. 11.)  The court held a hearing on the motion on February 28, 2023.  For the following reasons, the court grants the Defendants' motion in part and denies the motion in part.

## BACKGROUND

In her complaint, Plaintiff Casandra Tingey states that she was an Account Manager at MWCI, where she worked for 20 years.  (Compl., ECF No. 2-2 at ¶ 1; Pl.'s Resp., ECF No. 18

at 3.)[1]  On April 4, 2021, Ms. Tingey alleges that she was drugged and raped by a co-worker—Defendant Jeremy Bradley, who worked as an installer for MWCI—while the two were on a business trip in Georgia.  (Id. ¶¶ 30–32.)  Ms. Tingey reports severe physical injuries and emotional trauma from the assault.  (Id. ¶ 33.)  She received a medical examination when she returned to Utah and reported the incident to her supervisors at MWCI.[2]  (Id. ¶ 35; ECF No. 18 at 3.)

MWCI then hired a third party to open an investigation and transferred Mr. Bradley to another department at a different location pending the results of that investigation.  (ECF No. 2-2 at ¶¶ 38, 40.)  According to Ms. Tingey, the investigation was inadequate for a number of reasons, including that the investigator 1) never sought video footage from the hotel showing the interactions between Ms. Tingey and Mr. Bradley; 2) did not interview hotel staff; and 3) did not speak with the police in Georgia who received a report of the assault.  (Id. ¶ 41.)

Based on the results of that investigation, and within 30 days after the incident, MWCI transferred Mr. Bradley back to his original position at the same location he had previously worked.  (Id. ¶ 45.)  The Defendants allege that Mr. Bradley was instructed not to interact with Ms. Tingey.  (ECF No. 11 at 4.)  Nevertheless, Ms. Tingey reports anxiety and distress from the knowledge that Mr. Bradley was nearby and that she might run into him without warning.  (ECF No. 2-2 at ¶ 46.)  Indeed, Ms. Tingey reports two occasions on which she unexpectedly

---

[1] For ease of reference, ECF citations are to PDF pages rather than internal document pages.

[2] The Defendants provide different facts, including that Ms. Tingey's husband reported the assault to MWCI while Ms. Tingey was still in Georgia and that MWCI arranged to end the trip and fly her home.  (ECF No. 11 at 7.)  When considering a motion to dismiss, the court takes all well-pled factual allegations in Ms. Tingey's complaint as true and construes them in the light most favorable to her.  See Strauss v. Angie's List, Inc., 951 F.3d 1263, 1267 (10th Cir. 2020).  The court therefore adopts Ms. Tingey's version of events for the purposes of this order.

encountered Mr. Bradley while at the office.  (Id. ¶ 47.)  After reporting these incidents to her supervisors, she alleges that she was belittled and that her concerns were dismissed.  (Id.)

On January 4, 2022, Ms. Tingey declined to attend a mandatory meeting at which she knew Mr. Bradley would be present.  (Id. ¶ 48.)  Although MWCI provided her with a virtual attendance option, the company refused to excuse Ms. Tingey from attending or to dismiss Mr. Bradley from the meeting.  (Id.)

Two of Ms. Tingey's supervisors, Defendants Marshall Tate and Sean Wright, met with Ms. Tingey on January 6, 2022, to reprimand her for failing to attend the meeting.  (Id. ¶ 49.) According to Ms. Tingey, Mr. Tate berated her and told her that she was overreacting.  (Id.)  Ms. Tingey had a second meeting on January 25, 2022, this time with Mr. Tate and another supervisor, Defendant Tami Shulsen, at which her supervisors expressed concern over the quality of her work.[3]  (Id. ¶ 50.)  Ms. Tingey alleges that both meetings were initially scheduled to be virtual but were switched to in-person meetings at the last minute, despite Ms. Tingey's concerns about running into Mr. Bradley.  (Id. ¶ 51.)  Ms. Tingey asserts that the meetings were intentionally held in person in the hopes that she would be uncomfortable coming into the office and would resign.  (Id.)

Ms. Tingey did resign from MWCI on February 14, 2022.  (Id. ¶ 54.)  She believed that MWCI failed to provide an appropriate response to her assault and failed to protect her from Mr. Bradley.  (Id.)

On May 11, 2022, Ms. Tingey filed a Charge of Discrimination against MWCI with the Utah Antidiscrimination and Labor Division of the Utah Labor Commission (UALD) alleging

---

[3] The Defendants allege that, in early 2022, one of MWCI's designers accused Ms. Tingey of overcompensating herself and thereby stealing the designer's commissions.  (ECF No. 11 at 4.)  The court disregards this accusation for the purposes of this motion.

sex and disability discrimination, as well as retaliation.  (ECF No. 11 at 4.)[4]  On July 27, 2022,

Ms. Tingey filed a Request for Withdrawal of Charge of Discrimination and Request for a Notice

of Right to Sue with UALD.  (Id.)  On August 10, 2022, UALD closed Ms. Tingey's complaint

and informed the parties that it would discontinue its administrative process.  (Id.)  On

September 21, 2022, the Equal Employment Opportunity Commission (EEOC) issued Ms.

Tingey a Notice of Right to Sue.  (Id.)

Ms. Tingey originally filed her complaint in the Third District Court of Salt Lake County,

Utah, on October 6, 2022.  (ECF No. 2-2).  The Defendants collectively removed the case to

federal court (see Notice of Removal, ECF No. 2), asserting federal question jurisdiction under

28 U.S.C. § 1331 due to Ms. Tingey's Title VII claim.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal if the complaint fails to state

a claim upon which relief can be granted.  The court must accept all well-pled factual allegations

as true and construe them in the light most favorable to the nonmoving party.  Strauss v. Angie's

List, Inc., 951 F.3d 1263, 1267 (10th Cir. 2020).  But that rule does not apply to legal

conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  "[M]ere 'labels and conclusions,'

and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must

offer specific factual allegations to support each claim."  Kan. Penn Gaming, LLC v. Collins,

656 F.3d 1210, 1214 (10th Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

(2007)).  "[T]o withstand a motion to dismiss, a complaint must have enough allegations of fact,

---

[4] The court takes the procedural history from the Defendants' briefing, which was not disputed by Ms. Tingey.

4

taken as true, 'to state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

## ANALYSIS

Ms. Tingey brings the following causes of action: 1) assault and battery; 2) Title VII; 3) constructive termination in violation of Utah public policy; 4) failure to pay commissions; 5) breach of contract; 6) unjust enrichment; 7) intentional infliction of emotional distress; 8) negligent infliction of emotional distress; 9) defamation; 10) false light; and 11) negligence.

At the motion hearing, Ms. Tingey's counsel confirmed that Ms. Tingey brings her Title VII and contractual claims (the Fourth, Fifth, and Sixth causes of action) solely against MWCI and not against Mr. Bradley or the Supervisor Defendants.  MWCI has not moved to dismiss these causes of action but, jointly with the Supervisor Defendants, moves to dismiss the First, Third, Seventh, Eighth, Ninth, Tenth, and Eleventh causes of action.  Mr. Bradley has not moved to dismiss the two causes of action asserted against him: the First cause of action for assault and battery and the Seventh cause of action for intentional infliction of emotional distress.

### I.  Assault & Battery (First Cause of Action)

MWCI and the Supervisor Defendants move to dismiss the assault and battery claim against them on the ground that there is no vicarious liability for the intentional torts of an employee.  See Helf v. Chevron U.S.A., Inc., 203 P.3d 962, 975 (Utah 2009) (holding that vicarious liability only lies where the employee's conduct 1) is of the general kind the employee is employed to perform; 2) occurs within the hours of the employee's work and the ordinary spatial boundaries of the employment; and 3) is motivated, at least in part, by the purpose of serving the employer's interest).  Ms. Tingey responds that the assault and battery claim is

premised on the direct actions of the employer and supervisors—specifically the way these Defendants investigated her allegations and their subsequent treatment of her.  (ECF No. 18 at 7.)  Most importantly, Ms. Tingey maintains that MWCI intentionally put her in close proximity to Mr. Bradley when the company moved Mr. Bradley back to his old position.  (Id.)

In Utah, the elements of civil assault are: 1) "[t]he defendant acted, intending to cause harmful or offensive contact with the plaintiff, or imminent apprehension of such contact;" 2) "[a]s a result, the plaintiff was thereby put in imminent apprehension of [harmful] contact;" and 3) "[t]he plaintiff suffered injuries proximately caused by the defendant's actions."  D.D.Z. ex rel. M.T.Z. v. Molerway Freight Lines, Inc., 880 P.2d 1, 3 (Utah Ct. App. 1994).

Ms. Tingey has not cited the court to any case where the requisite actor for the purposes of assault includes a person or entity who places someone in proximity with a person who previously performed an assault.  Notably, the Utah Court of Appeals dismissed on summary judgment an assault and battery claim against an employer and co-employees where several employees witnessed a sexual assault in the bed of a truck during a work party and did nothing to intervene.  See id. at 4–5.  The court held that the co-worker was not the right actor to be held directly liable for an assault committed by someone else.  Id. at 4.

Even taking all of Ms. Tingey's assertions as true, the emotional harm caused to Ms. Tingey of forcing her to attend meetings and share the same workplace with Mr. Bradley is too remote to qualify for the requisite apprehension of imminent harmful or offensive contact necessary to hold either MWCI or the Supervisor Defendants directly liable for assault and battery.

The court therefore dismisses Ms. Tingey's assault and battery claim against MWCI and the Supervisor Defendants.

## II.   Title VII (Second Cause of Action)

At the hearing, Ms. Tingey clarified that she asserts her Title VII claim only against MWCI, who has not moved to dismiss this cause of action.

## III.   Constructive Termination (Third Cause of Action)

MWCI and the Supervisor Defendants move to dismiss Ms. Tingey's third cause of action on the ground that it is preempted by the Utah Antidiscrimination Act (UADA).  See Utah Code Ann. § 34A-5-107(15) (stating that the UADA is the "exclusive remedy under state law for employment discrimination based upon … sex …."). Ms. Tingey did not respond to this argument.  The court agrees with the Defendants that this provision "unambiguously indicates that the UADA preempts common law causes of action for employment discrimination …." Gottling v. P.R. Inc., 61 P.3d 989, 993 (Utah 2002) (citation omitted).  Because Ms. Tingey's claim is based on "a hostile work environment," "sexual harassment," and retaliation for "engaging in protected opposition to the discrimination that she reported" (ECF No. 2-2 at ¶¶ 107–08), she cannot prove her claim without showing employment discrimination or retaliation.

Her claim is therefore preempted by the UADA and the court dismisses this cause of action against all Defendants.

## IV.   Failure to Pay Commissions, Breach of Contract, and Unjust Enrichment (Fourth, Fifth, and Sixth Causes of Action)

At the hearing, Ms. Tingey clarified that she asserts her breach of contract claims only against MWCI, who has not moved to dismiss these causes of action.

## V.   Intentional Infliction of Emotional Distress (Seventh Cause of Action)

MWCI and the Supervisor Defendants move to dismiss the intentional infliction of emotional distress claim against them on the ground that the claim is barred by the Utah Workers' Compensation Act (UWCA).  The exclusive remedy provision of the UWCA, see Utah

Code Ann. § 34A-2-105, shields employers from common law liability for intentional or reckless acts that injure employees in the workplace "unless it is shown that the employer intended or directed the act which caused the emotional distress." Newsome v. McKesson Corp., 932 F. Supp. 1339, 1343 (D. Utah 1996). But while the Defendants are correct that the UWCA bars Ms. Tingey's negligent infliction of emotional distress claim, her complaint alleges that her employer and the Supervisor Defendants intentionally wanted to cause her pain by forcing her to interact with her alleged rapist.

In Utah, a plaintiff who claims intentional infliction of emotional distress must prove the following:

> (1) The defendant intentionally engaged in some conduct toward the plaintiff considered outrageous in that it offends the generally accepted standards of decency and morality (2) with the purpose of inflicting emotional distress or where any reasonable person would have known such result, and (3) such emotional distress resulted.

Matthews v. Kennecott Utah Copper Corp., 54 F. Supp. 2d 1067, 1075 (D. Utah 1999). In somewhat similar circumstances, a federal district court in Oklahoma allowed a claim for intentional infliction of emotional distress to survive a motion to dismiss where the plaintiff alleged that a school supervisor failed to protect her after she reported a rape and failed to punish other students who threatened her. Miles v. Washington, No. CIV-08-166-JHP, 2009 WL 259722, at *6 (E.D. Okla. Feb. 2, 2009); see also Retherford v. AT&T Comms. of the Mountain States, Inc., 844 P.2d 949, 978 (Utah 1992) ("[C]onduct generally labeled sexual harassment is outrageous and intolerable and, when performed with the requisite intent, satisfies the elements of the tort of intentional infliction of emotional distress.").

Ms. Tingey has alleged that MWCI and the Supervisor Defendants intentionally forced her to be in the same space as Mr. Bradley and treated her concerns with derision. Taking the

facts in the light most favorable to Ms. Tingey, the court finds that her claim for intentional infliction of emotional distress survives at this stage.

## VI. Negligent Infliction of Emotional Distress and Negligence (Eighth and Eleventh Causes of Action)

The UWCA preempts claims for negligence that are rooted in workplace conduct if the plaintiff "cannot prove her negligence … claims without proving physical or mental injury that occurred on the job." Giddings v. Utah Transit Auth., 107 F. Supp. 3d 1205, 1211 (D. Utah 2015). Ms. Tingey did not respond to the Defendants' argument about why these causes of action should be dismissed. The court agrees with the Defendants that these claims arise out of actions that occurred in the workplace and are therefore preempted by the UWCA.

Accordingly, the court dismisses Ms. Tingey's Eighth and Eleventh causes of action.

## VII. Defamation (Ninth Cause of Action)

To establish a claim for defamation, Ms. Tingey must demonstrate that "(1) the defendant published the statements in print or orally; (2) the statements were false; (3) the statements were not subject to privilege; (4) the statements were published with the requisite degree of fault; and (5) the statements resulted in damages." Oman v. Davis Sch. Dist., 194 P.3d 956, 972 (Utah 2008) (citation omitted).

MWCI and the Supervisor Defendants argue that Ms. Tingey's claims should be dismissed for failure to plead her claims with particularity. "Pleading defamation requires specificity including what was said, to whom it was said, and when and where it was said." Majors v. Thomas Jefferson Sch. of L., No. 2:11-cv-558-CW, 2011 WL 7561516, at *4 (D. Utah Nov. 22, 2011). The court agrees that the complaint is vague and contains no details about the context of the alleged defamatory statements, averring only that "Defendants and other MWCI employees published false statements indicating that" 1) Ms. Tingey was guilty of public

intoxication; 2) she was at fault for the assault; 3) she was performing poorly at work; and 4) she had misappropriated certain commissions.  (ECF No. 2-2 at ¶¶ 187–90.)  These allegations do not indicate who said what to whom; it is also unclear when and where these statements were made.[5]

Ms. Tingey provides some additional detail in her response to the Defendants' motion. First, Ms. Tingey alleges that a "worker" reported certain statements by MWCI's owner, Mr. Tate—namely, that Ms. Tingey "had fallen off the wagon again" and that MWCI was "trying to get help for Tingey, but she refused and therefore she left"—that he made in May 2022.  (ECF No. 18 at 14.)  Second, Ms. Tingey states that, in August 2022, "[a]nother worker" told her that Mr. Tate and Mr. Wright had "suggested" that Ms. Tingey was sleeping with Mr. Bradley for several months before the rape.  (Id.)  Finally, Ms. Tingey alleges that, in January 2022, someone stated that she had stolen money from the company.  (Id. at 15.)  Ms. Tingey does not clarify who made this statement.

The court finds that these additional details are insufficient to allow Ms. Tingey to replead her defamation claims.  To the extent they are clear—again, the context of the conversations is missing—, the statements made by Mr. Tate appear to center around Ms. Tingey's work performance and were made to a worker at MWCI.  Internal discussions regarding the reasons for an employee's termination are privileged.  See Brehany v. Nordstrom, Inc., 812 P.2d 49, 58 (Utah 1991) ("This qualified privilege protects an employer's communication to employees and to other interested parties concerning the reasons for an

---

[5] Defendants also argue that Ms. Tingey has not alleged special damages.  (ECF No. 11 at 22.)  But the purported defamatory statements concern Ms. Tingey's reputation as an unchaste woman and accusations of criminal activity (misappropriation of commissions), two allegations which qualify as slander per se and do not require a showing of special damages.  See Macris v. Sevea Int'l, Inc., 307 P.3d 625, 638 (Utah Ct. App. 2013) (quoting Allred v. Cook, 590 P.2d 318, 320 (Utah 1979)).

employee's discharge.").  Ms. Tingey could overcome this privilege by showing that Mr. Tate

acted with malice, publicized the defamatory material beyond those who had a legally justified

reason for receiving it, or made the statements with knowledge of their falsity or reckless

disregard as to their falsity.  See Nelson v. Target Corp., 334 P.3d 1010, 1018 (Utah Ct. App.

2014).  But Ms. Tingey has made only conclusory statements that Mr. Tate knew the statements

were false and has not otherwise alleged facts sufficient to support these elements.

The court similarly finds that it is insufficient for Ms. Tingey to allege that Mr. Tate and

Mr. Wright "suggested" certain defamatory comments without providing more detail about what

was said or when.  Finally, there is no specificity at all—even concerning the speaker's

identity—regarding the comments that Ms. Tingey stole from the company.  Although Ms.

Tingey claims that she was "compelled to repeat … those statements to third parties such as

prospective employers," (ECF No. 18 at 15), she provides no information about how and why

she was forced to republish the defamatory remarks.

For these reasons, the court dismisses Ms. Tingey's claim for defamation.  Because Ms.

Tingey was unable to provide the requisite specificity in either her briefing or in argument at the

hearing, the court finds that amendment would be futile and will not grant her leave to replead

this claim.  See Jensen v. IHC Hosps., Inc., 82 P.3d 1076, 1102 (Utah 2003) ("Although leave to

amend is freely given when justice so requires, justice does not require that leave be given if

doing so would be futile." (citations omitted)).

### VIII.  False Light (Tenth Cause of Action)

Under Utah law, false light occurs when:

(1) [an actor] gives publicity to a matter concerning another that places the other
before the public in a false light; (2) the false light in which the other was placed
would be highly offensive to a reasonable person; and (3) the actor had

11

knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Stien v. Marriott Ownership Resorts, Inc., 944 P.2d 374, 380 (Utah Ct. App. 1997) (cleaned up).

Ms. Tingey did not respond to the Defendants' argument seeking to dismiss this cause of action and the court agrees with the Defendants that Ms. Tingey has not pled the publicity element with sufficient particularity.  The court therefore dismisses Ms. Tingey's claim for false light against all Defendants.

## ORDER

For the reasons stated above, the court ORDERS as follows:

1.      The Defendants' Partial Motion to Dismiss (ECF No. 11) is GRANTED IN PART and DENIED IN PART.

2.      The court dismisses the First cause of action for assault and battery against MWCI and the Supervisor Defendants.

3.      The court dismisses the Third and Tenth causes of action for constructive termination and false light against all Defendants for failure to state a claim.

4.      The court dismisses the Eighth and Eleventh causes of action for negligent infliction of emotional distress and negligence against all Defendants as they are barred by the exclusive remedy provision of the Utah Workers' Compensation Act (UWCA).

5.      The court dismisses Ms. Tingey's Ninth cause of action for defamation against all Defendants for failure to plead her claims with particularity.

6.      The following claims remain pending: the Second, Fourth, Fifth, Sixth, and Seventh causes of action against MWCI; the First and Seventh causes of action against Mr. Bradley; and the Seventh cause of action against the Supervisor Defendants.

7.      The court does not grant Ms. Tingey leave to file an amended complaint.

DATED this 12th day of December, 2023.

BY THE COURT:

_Tena Campbell_
Tena Campbell
United States District Judge